**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**CALVIN COLEMAN**                                          **CIVIL ACTION**

**VERSUS**                                                        **NO: 07-3655**

**BURL CAIN**                                                    **SECTION: "H"(6)**

**<u>ORDER AND REASONS</u>**

Before the Court is a petition for writ of habeas corpus filed by Petitioner, Calvin Coleman ("Petitioner"). Defendant, Burl Cain ("Defendant"), opposes the petition. Petitioner asserts 10 claims for relief. The Court held an evidentiary hearing as to Claim 6 and Claim 7. *See* 28 U.S.C. § 2254(e)(2). For the following reasons, the petition is DISMISSED WITH PREJUDICE.

**PROCEDURAL BACKGROUND**

Petitioner is presently incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. (State Rec., Supp. Vol. 5 of 13, order dated March 26, 2002.) On August 10, 2000, an Orleans Parish grand jury indicted Petitioner for first-degree murder. *State v. Coleman*, No. 2002-K-0130, at p. 1

1

(La. App. 4 Cir. 9/25/02) (unpublished); (State Rec., Vol. 3 of 3). The case proceeded to trial on May 7, 2001, but the jury was unable to reach a unanimous decision. *Id.* The State subsequently amended the indictment charge to second-degree murder. *Id.* A second jury trial was held on July 16, 2001, and Petitioner was convicted. *Id.* On August 14, 2001, Petitioner was sentenced to a mandatory penalty of life imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. *Id.* On September 25, 2002, the Louisiana Fourth Circuit Court of Appeal affirmed the conviction and sentence. *Id.* at 9. The Louisiana Supreme Court denied Petitioner's writ application on March 28, 2003. *State v. Coleman*, No. 2002-K-2649 (La. 3/28/03); (State Rec., Supp. Vol. 2 of 13).

Following the completion of his direct appeal proceedings, Petitioner filed for post-conviction relief on June 25, 2004. He then filed an amended application for post-conviction relief on March 29, 2005, raising nine separate claims of error. (State Rec., Supp. Vol. 7 of 13.) On September 29, 2006, the trial court dismissed eight of Petitioner's nine claims. (State Rec., Vol. 1 of 1.) On November 6, 2006, the trial court denied relief on Petitioner's remaining claim. (State Rec., Supp. Vol. 7 of 13, minute entry dated Nov. 6, 2006.) Petitioner then filed a writ application in the Louisiana Fourth Circuit Court of Appeals, which was denied on February 13, 2007. *State v. Coleman*, 2006-K-1595 (La. App. 4 Cir. 2/13/07) (unpublished); (State Rec., Supp. Vol. 7 of 13). Petitioner subsequently filed an application for supervisory writs in the Louisiana Supreme Court, which was denied on November 16, 2007. *State v. Coleman*, 2007-KP-514 (La. 11/16/07).

On March 15, 2007, Petitioner filed a second application for post-conviction relief, alleging three claims of error. (State Rec., Supp. Vol. 9 of 13.) The trial court found that one claim was procedurally barred under the Louisiana Code of Criminal Procedure and that one claim failed to state a claim upon which relief could be granted. (State Rec., Supp. Vol. 11 of 13, application for supervisory review, 2009-KP-0453, Exhibit C.)

On July 6, 2007, Petitioner filed the instant petition for habeas corpus. (Rec. Doc. 1.) The Court stayed the case on April 2, 2008, pending Petitioner's exhaustion of post-conviction relief in state court as to his remaining claim. (Rec. Doc. 14.) On February 12, 2010, the Louisiana Supreme Court denied two of the three claims in Petitioner's second application for post-conviction relief. *State of La. v. Coleman*, 2009-OK-1360. On June 18, 2010, the Louisiana Supreme Court denied Petitioner's third claim in his second application for post-conviction relief. *State of La. v. Coleman*, 2010-KP-1216. On August 12, 2010, Petitioner filed an amended petition for writ of habeas corpus. (Rec. Doc. 23.) He asserts the following ten claims in support of relief:

1. The State withheld exculpatory impeachment evidence relating to Arc Angelety;

2. The State withheld exculpatory impeachment evidence relating to Vertis Alexander;

3. The cumulative effect of Claims 1 and 2 violated Petitioner's constitutional rights;

4. Petitioner was convicted on the basis of unconfronted hearsay testimony;

5. Petitioner was denied his Sixth Amendment right to counsel due to a conflict of interest between his appointed lawyer and the trial judge;

3

6. Petitioner was denied his Sixth Amendment right to counsel due to a conflict of interest between Petitioner and his appointed lawyer;

7. Petitioner received ineffective assistance of trial counsel;

8. Petitioner received ineffective assistance of appellate counsel;

9. Petitioner was denied the right to direct appellate review based on an incomplete transcript of trial proceedings; and

10. Petitioner was indicted by an unconstitutionally-selected grand jury.

**FACTS**

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts as follows:

> Detective Bernard Crowden testified that on May 19, 2000 he proceeded to 1132 Carondelet Street to investigate a shooting. Upon arrival, he observed a prone unresponsive black male with an apparent gunshot wound to the chest. The body was situated in the threshold of an apartment occupied by Miss Annie Jones. A small vial of cocaine was recovered near the body. Vertis Alexander occupied an apartment located at the end of the hallway. Detective Crowden and other officers were able to locate five potential witnesses who accompanied the officers back to the police station. Based upon Crowden's interviews with the witnesses, Calvin Coleman was developed as a suspect in the homicide and Detective Crowden obtained a warrant for his arrest.
> Dr. James Taylor testified as an expert in forensic medicine and told the jury that he performed an autopsy on the victim, Tony Cressey. He determined that Cressey died as a result of gunshot

wounds inflicted in a homicide. Tests revealed the presence of cocaine in the deceased's urine.

Annie Jones testified that she was acquainted with the defendant from seeing him in the neighborhood for several weeks prior to the shooting. Furthermore, she had seen him around the apartment building all day before the shooting. Annie Jones related that on the day of the shooting she was inside her apartment when she heard a popping sound and then heard screaming. She immediately opened her door to check on the safety of her godchild, who was right outside. She saw the victim lying on the floor. Calvin Coleman, who she knew by the moniker of "Casino," was standing over the victim with one hand in his pocket. She recognized him at once. In defendant's other hand she observed a handgun. She grabbed the baby and told her daughter to call 911. Later, Jones readily identified Coleman from a photographic lineup.

Arc Angelety testified that he has known the defendant for approximately two years. On the day of the shooting, Angelety was at 1132 Carondelet Street with his girlfriend Derwanda. Angelety and Derwanda were coming down the stairs when he heard Calvin Coleman and the victim arguing. He recalled something to the effect of "Give me your money" and "You think I'm playing" being said. When Angelety looked he saw that Coleman was clenching Cressey's shirt and that he had a gun to Cressey's head. Coleman was telling Cressey to give it up, and when Cressey pulled away, Coleman shot him in the chest. Angelety saw Coleman reach into Cressey's pocket and remove a large amount of money. He and Derwanda ran out of the building and then heard more gunshots.

Derwanda grew concerned as her son was in the apartment, and the two returned where they remained until the police arrived. Angelety stated that he did not speak to any officers at the scene and left without stating that he had witnessed the murder.

Two weeks later, Derwanda was murdered, and Angelety contacted the police. He met with Detective Crowden and gave a statement as to what he observed. He identified Calvin Coleman from a photographic lineup.

Vertis Alexander testified that he was living in the building at 1132 Carondelet Street. Alexander had known the victim for

5

approximately two years and the defendant for approximately four years. On the day of the shooting, Alexander was in his kitchen when he heard a couple of shots. Initially he entered the hallway to see what had happened and then he heard the sound of someone approaching and retreated to his apartment and peered out into the hallway from behind the door. Alexander stated that he saw the defendant coming down the hall with a gun in his hand. Alexander asked him several times what had happened but he did not respond. Finally, the defendant asked Alexander for his keys, but Alexander explained that he had left them in the washroom. Coleman did not say anything else and left the building.

Alexander proceeded to the end of the hallway and observed Tony Cressey on the floor. Alexander stated that he was moving his head. The screen door was on his head and Alexander held the door open. Alexander spoke briefly with the police and stated that he could identify the shooter if he saw him again.

Alexander admitted that he has previous convictions for possession of cocaine and for distribution of cocaine. Furthermore, he had a pending case for distribution of cocaine in another section of Criminal District Court. Alexander was aware that if convicted in the pending case he could receive a life sentence. Approximately one month after the shooting, after consulting with his attorney, Alexander made a statement to police at his attorney's office and identified Calvin Coleman from a photographic lineup.

*State v. Coleman*, No. 2002-K-0130, at pp. 1-4 (La. App. 4 Cir. 9/25/02) (unpublished); (State Rec., Vol. 3 of 3.)

## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections

2254(d)(1) and (2) contain revised standards of review for questions of law, questions of fact, and mixed questions of law and fact. When the state habeas court adjudicates a claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and pure questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has noted that:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially distinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002).

A state court's factual findings are presumed to be correct and may only be rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Habeas relief will not be granted under 28

7

U.S.C. § 2254(d)(2) unless the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Hill*, 210 F.3d at 485.

## LAW AND ANALYSIS

I.  <u>Claims 4 & 10</u>

Claim 4 alleges Petitioner was convicted on the basis of unconfronted hearsay testimony in violation of the Sixth Amendment. Although Petitioner objected to the testimony at trial, he failed to pursue the objection on direct appeal. Nevertheless, Petitioner raised the objection during the course of state post-conviction proceedings. The state habeas court denied relief, finding that the claim was fully litigated and decided on direct appeal. The Louisiana Supreme Court ruled that the claim was *not* fully litigated on direct appeal, but found that it was properly dismissed as procedurally barred pursuant to article 930.4(C) of the Louisiana Code of Criminal Procedure.[1]

Claim 10 alleges the Louisiana grand jury impanelment statute is unconstitutional. Although the issue of racial discrimination in the selection of the grand jury was raised on direct appeal, Petitioner did not contest the unconstitutionality of the statute on direct review before the Louisiana Supreme Court. On collateral review, the Louisiana Supreme Court determined Petitioner was aware of the claim at trial but failed to pursue it on direct appeal. Consequently, the Louisiana

---

[1] Article 930.4(C) of the Louisiana Code of Criminal Procedure provides as follows: "[i]f the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief." La. Code Crim. Proc. art. 930.4(C).

Supreme Court ruled that the trial court properly dismissed the claim as procedurally barred pursuant to article 930.4(B) of the Louisiana Code of Criminal Procedure.[2]

Federal habeas review is limited in scope by the doctrine of procedural default. *Coleman v. Thompson*, 501 U.S. 722, 730–32 (1991). Procedural default precludes federal habeas relief when the last state court judgment to deny a claim rests on an independent and adequate state procedural bar. *Id.* at 729–30. "The 'independent and adequate state law' doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review." *Pierce v. Cain*, No. 06-2117, 2008 WL 1766998, at *14 (E.D. La. Apr. 15, 2008).

In order to satisfy the independence requirement, the last state court to issue a reasoned judgment must clearly and expressly indicate that its decision rests on a state procedural bar. *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995). A procedural rule is adequate if it is regularly followed and applied evenhandedly to the vast majority of similar cases. *Glover*, 128 F.3d at 902. Procedural rules are presumed adequate. *Amos*, 61 F.3d at 339. Thus, where there is no suggestion that the state rule is applied selectively or irregularly, federal courts will find the state rule adequate to support the judgment. *Glover*, 128

---

[2] Article 930.4(B) of the Louisiana Code of Criminal Procedure provides that "[i]f the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to a conviction, the court may deny relief." La. Code Crim. Proc. art. 930.4(B).

F.3d at 902. A discretionary state procedural rule can qualify as an adequate basis for barring federal habeas review. *Beard v. Kindler*, 130 S. Ct. 612, 618 (2009). Several sections of this Court have recognized article 930.4 of the Louisiana Code of Criminal Procedure as an adequate and independent state procedural ground for purposes of procedural default. *See, e.g.*, *Jones v. Cain*, No. 10-187, 2010 WL 3312592, at *5 (E.D. La. July 29, 2010) (finding that articles 930.4(B) and 930.4(C) were independent and adequate state law procedural grounds for denying habeas relief); *Rose v. Prince*, No. 08-4783, 2009 WL 2922801, at *5 (E.D. La. Sept. 10, 2009) (same as to articles 930.4(C) and 930.4(F)); *Pierce*, 2008 WL 1766998, at *15 (same).

In the instant case, the Louisiana Supreme Court was the last state court to issue a reasoned opinion denying Claims 4 and 10. In the course of collateral review, the Louisiana Supreme Court clearly and expressly indicated that the trial court properly dismissed Claim 4 pursuant to article 930.4(C) of the Louisiana Code of Criminal Procedure, and Claim 10 pursuant to article 930.4(B) of the Louisiana Code of Criminal Procedure. Thus, the Louisiana Supreme Court's rulings satisfy the independence requirement because they exclusively relied on rules of Louisiana procedural default, which are independent of federal law. In accord with *Jones*, *Rose*, and *Pierce*, articles 930.4(B) and 930.4(C) of the Louisiana Code of Criminal Procedure qualify as adequate state grounds, because Louisiana courts regularly follow and apply article 930.4 evenhandedly to the vast majority of similar cases. Accordingly, the Court finds that the procedural basis for the state court's denial of Claims 4 and 10 was both independent and adequate.

10

Notwithstanding the foregoing, a procedural default may be excused if a petitioner can demonstrate cause and prejudice. *Coleman*, 501 U.S. at 748. In order to establish cause, a petitioner must show that "some objective factor external to the defense impeded his efforts to raise the claim in state court." *Young v. Warden*, No. 08-356, 2010 WL 2218656, at *6 (W.D. La. Apr. 26, 2010) (citing *Murray v. Carrier*, 477 U.S. 478 (1996)). "[T]he mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default." *Murray*, 477 U.S. at 486. "The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997). Petitioner has failed to demonstrate that objective factors impeded his efforts to raise Claims 4 and 10 at trial and on direct appeal. Because Petitioner has failed to show objective cause for his default, the Court need not determine whether Petitioner was prejudiced.

Alternatively, Petitioner may avoid procedural default if he can demonstrate that a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. *Id.* In order to establish a fundamental miscarriage of justice, the petitioner must offer evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986). In order to demonstrate factual innocence, a petitioner must "show that it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt." *Lucas v. Johnson*, 132 F.3d 1069, 1077 (5th Cir. 1998). Petitioner has not offered sufficient evidence to

create a reasonable doubt as to his guilt or establish actual innocence of the crimes charged. Thus, Petitioner cannot invoke the fundamental miscarriage of justice exception.

II.    Claims 1 & 2

In Claims 1 and 2, Petitioner contends the State withheld exculpatory impeachment evidence related to two witnesses—Arc Angelety and Vertis Alexander—in violation of *Brady v. Maryland* and *Giglio v. United States*.   In *Brady v. Maryland*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963).  To establish a *Brady* violation, the Fifth Circuit requires the defendant to prove that "(1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to his guilt or punishment." *Cobb v. Thaler*, 682 F.3d 364, 377 (5th Cir. 2012).  The remedy for a *Brady* violation is a new trial.  *United States v. Brown*, 650 F.3d 581, 588 (5th Cir. 2011).  In *Giglio v. United States*, 405 U.S. 170 (1972), the Supreme Court extended the *Brady* rule to impeachment evidence.  *Matthew v. Johnson*, 201 F.3d 353, 360 (5th Cir. 2000).

The first prong of the *Brady* inquiry requires that the suppressed evidence be favorable to the accused. *United States v. Sipe*, 388 F.3d 471, 477 (5th Cir. 2004).  "Any understanding or agreement as to a future prosecution would be relevant to [the witness's] credibility and the jury is entitled to know of it." *Giglio*, 405 U.S. at 155.  Thus, under *Brady*  and *Giglio*, the prosecution

is obligated to disclose any expectation of leniency that a trial witness anticipates in exchange for his testimony. *See generally Tassin v. Cain*, 517 F.3d 770 (5th Cir. 2008). This disclosure obligation exists even when there is no "firm promise" of leniency. *Id.* at 777.

Nevertheless, a petitioner must offer sufficient evidence that a witness received leniency or anticipated receiving leniency from the State. In *Madellin v. Dretke*, the Fifth Circuit dismissed a *Brady* claim because the petitioner failed to demonstrate that an agreement existed between the State and one of the State's witnesses. 371 F.3d 270, 281 (5th Cir. 2004). The petitioner alleged the State had promised a witness that his misdemeanor charge would be dismissed if he and his wife testified during the petitioner's trial. *Id.* Even though the misdemeanor charges against the witness were eventually dropped, the Fifth Circuit found that the petitioner's claim rested on a "substantial degree of speculation" and that there was insufficient evidence to show that any agreement existed. *Id.*; *see also Frazier v. Warden La. State Penitentiary*, No. 06-312, 2008 WL 4104521, at *6 (W.D. La. July 10, 2008) (holding that the petitioner failed to adduce sufficient evidence of a deal between the state witness and the prosecutor); *Dowthitt v. Johnson*, 230 F.3d 733, 756 n.33 (5th Cir. 2000) (finding that evidence of the witness's lenient sentence was not sufficient, by itself, to demonstrate that a deal existed between the witness and the State).

The second prong of the *Brady* test concerns suppression of favorable evidence by the prosecution. *Sipe*, 388 F.3d at 477. Evidence is not considered suppressed if the defendant "knows or should know the essential facts that would enable him to take advantage of it." *United States*

13

*v. Runyam*, 290 F.3d 223, 246 (5th Cir. 2002) (internal citations omitted); *see also United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980) ("[W]hen information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim.").

In order to establish prejudice under the third prong of the *Brady* test, the defendant must show that the suppressed evidence is material to the defendant's guilt. *Martin v. Cain*, 246 F.3d 471, 477 (5th Cir. 2001). Evidence is material under *Brady* if it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 434–35 (1995). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Rector v. Johnson*, 120 F.3d 551, 562 (5th Cir. 1997). Instead, there must be a "reasonable probability of a different result." *Kyles*, 514 U.S. at 434.

When evaluating the materiality of impeachment evidence, a court must consider "the nature of the impeachment evidence improperly withheld and the additional evidence of the defendant's guilt independent of the disputed testimony." *Wilson v. Whitley*, 28 F.3d 433, 439 (5th Cir. 1994). Impeachment evidence is material if it "would seriously undermine the testimony of a key witness on an essential issue" or demonstrate lack of corroboration. *United States v. Weintraub*, 871 F.2d 1257, 1262 (5th Cir. 1989). Conversely, "when the testimony of the witness who might have been impeached by the undisclosed evidence is strongly corroborated by

additional evidence supporting a guilty verdict, the undisclosed evidence generally is not found to be material." *Sipe*, 388 F.3d at 478. Thus, no *Brady* violation occurs when favorable impeachment evidence is merely cumulative of other evidence presented. *Id.*

    A.  *Impeachment Evidence Related to Arc Angelety*

Petitioner asserts the State unlawfully withheld exculpatory impeachment evidence related to Arc Angelety. Mr. Angelety was arrested in September of 2000 for possession of marijuana. The State informed Petitioner that Mr. Angelety was being accepted into a diversion program and moved to have evidence of Mr. Angelety's prior arrest excluded from trial. The trial court granted the State's motion. Between Petitioner's first and second trials, Mr. Angelety was rejected from the diversion program, and the State filed charges against him. Petitioner argues the prosecution failed to disclose that (1) Mr. Angelety had not been accepted into the diversion program, (2) that he was being prosecuted on the underlying drug charges, and (3) that he was subject to immediate arrest and that a $20,000 bond obligation had been issued for failure to appear at his arraignment. Following Petitioner's second trial, Mr. Angelety pleaded guilty and was sentenced to serve six months in the parish prison, which was suspended with six months of active probation. The state habeas court denied Petitioner's *Brady* claim pertaining to Mr. Angelety's criminal prosecution as procedurally barred. Notwithstanding the procedural bar, the state habeas court also addressed the merits of Petitioner's *Brady* claim. The court determined that evidence of Mr. Angelety's arrest without a conviction did not constitute *Brady* material because it would not have been admissible

15

impeachment evidence.[3]

The Court finds that Mr. Angelety's arrest record fails to meet *Brady's* materiality requirement. Even if defense counsel had been informed that the State reinstated charges against Mr. Angelety, that information would not have been admissible impeachment evidence because Mr. Angelety had not been convicted of any crime at the time of Petitioner's trial. *See Dowthitt*, 230 F.3d at 756 (finding no *Brady* violation when the state withheld evidence that a witness was under felony indictment because the indictment was not admissible to impeach and therefore immaterial). In addition, Mr. Angelety's testimony was cumulative of other eye-witness testimony. Therefore, defense counsel's attempt to discredit Mr. Angelety's testimony is insufficient to undermine confidence in the verdict.

Petitioner has also failed to demonstrate that Mr. Angelety's arrest and criminal charges were material impeachment evidence under *Giglio*. Of great significance is the timing of Mr. Angelety's identification of Petitioner as the person who shot Mr. Cressey. As the State notes, Mr. Angelety identified Petitioner before the arrest warrant was issued for Mr. Angelety's arrest. Because Mr. Angelety had not been arrested at the time he identified Petitioner as the shooter, he had no incentive to curry favor with the State. Furthermore, Mr. Angelety's trial testimony was consistent with his pre-trial identification of Petitioner as the individual who shot Mr. Cressey.

---

[3] Evidence regarding prior arrests not resulting in a conviction is inadmissible under Louisiana law. *State v. Johnson*, 664 So. 2d 94, 99 (La. 1995). Nonetheless, the Fifth Circuit has held that evidence may be material under *Brady* even though it is inadmissible. *Sipe*, 388 F.3d at 485.

Thus, there is no basis for concluding that Mr. Angelety's initial identification was made in contemplation of receiving favorable treatment. *See Felix v. Gov't of the Virgin Is.*, No. 04-108, 2005 WL 3077599, at *7–8 (D. Virgin Is. Nov. 3, 2005) (finding no *Brady* violation when the Government failed to disclose the pending arrest warrant for a key prosecution witness, because the witness identified the accused prior to being arrested).

    B.  *Impeachment Evidence Related to Vertis Alexander*

Petitioner also contends the prosecution withheld information concerning a deal in which Mr. Alexander would receive leniency at sentencing in exchange for his testimony at Petitioner's trial.  At the time of Petitioner's trial, Mr. Alexander faced drug charges and a mandatory sentence of life in prison without the possibility of parole. After identifying Petitioner as the person who killed Tony Cressey, but before Petitioner's trial, Mr. Alexander was offered an *Alford* plea in exchange for a probated sentence in drug court. Although that plea was later withdrawn, Mr. Alexander was sentenced to five years imprisonment to be served concurrently with a pending warrant for narcotics charges in Texas.

As evidence of the alleged deal, Petitioner notes Mr. Alexander waited four weeks before coming forward to identify Petitioner and did so only after his lawyer, Mr. Gary Wainwright, encouraged him to "do the right thing." Petitioner also directs the Court to a statement made by Mr. Wainwright to an OIDP investigator before Mr. Alexander was about to testify. According to Petitioner, Mr. Wainwright stated that he "didn't need to be [present] because [he and Mr.

Alexander] worked out a deal with the state." In the proceedings before the state habeas court, Mr. Wainwright denied making such a statement and further stated that Mr. Alexander had not been offered any leniency in exchange for his testimony. The Assistant District Attorney also testified that Mr. Alexander was not offered a deal in exchange for his testimony. At trial, Mr. Alexander denied the existence of any deal between him and the State.

In the instant case, Petitioner has failed to establish the existence of a deal between Mr. Alexander and the State, which dooms his *Brady* claim. The only evidence presented in support of the claim is Mr. Alexander's delayed identification of Petitioner, statements allegedly made by Mr. Wainwright, Mr. Alexander, and the Assistant District Attorney alluding to a deal, and the fact that Mr. Alexander received a reduced sentence in his criminal case. As in *Madellin*, *Frazier*, and *Dowthitt*, this evidence is insufficient to establish that Mr. Alexander was granted leniency as consideration for his testimony. At Petitioner's trial, Mr. Alexander testified that he was not offered a deal in exchange for his testimony. In addition, Mr. Wainwright and the Assistant District Attorney both testified at the hearing before the state habeas court that no such deal existed. At a subsequent hearing, the state habeas court ruled that Petitioner failed to state a basis upon which relief could be granted. This Court presumes the state habeas court's credibility determinations to be correct. Petitioner has not clearly and convincingly refuted the evidence in the record supporting the state habeas court's determination that no deal existed. Moreover, Petitioner offers no evidence of the statements allegedly made by Mr. Alexander, Mr. Wainwright,

and the Assistant District Attorney alluding to a deal. Petitioner's trial attorney argued his theory of a secret deal at trial, but the jury chose to reject it. Furthermore, the fact that Mr. Alexander received a reduced sentence in his criminal case is not sufficient, by itself, to show that a deal existed between Mr. Alexander and the State. Simply put, Petitioner has failed to present sufficient evidence that Mr. Alexander anticipated receiving leniency in exchange for his testimony.

Petitioner also argues the State violated *Brady* by suppressing "a written confession from Mr. Alexander and his attorney to . . . a serious firearm charge." Petitioner avers the prosecution failed to disclose letters exchanged between Mr. Wainwright and Assistant District Attorney Friedman. In the letters, Mr. Wainwright informed Mr. Friedman that he had supplied Mr. Alexander with a firearm for protection because another witness in the case had been killed. Mr. Friedman responded that he did not approve. Petitioner argues these letters show Mr. Alexander admitted to committing a felony.

The state habeas court ruled that the letter correspondence between Mr. Wainwright and Mr. Friedman did not constitute impeachable *Brady* material because the letters were inculpatory, rather than exculpatory and would not have undermined confidence in the outcome of the trial. This Court agrees. The letters fail to meet the first prong of the *Brady* test because they are not favorable to Petitioner. The letters merely suggest that witnesses who were prepared to testify against Petitioner were being killed. Moreover, the Assistant District Attorney testified before the state habeas court that there was insufficient evidence to charge Mr. Alexander as a felon in

possession of a firearm and that no charges were filed. *See Stoker v. Scott*, 101 F.3d 701, at *6–7 (5th Cir. 1996) (unpublished) (finding no agreement between the witness and the prosecutor in violation of *Brady* when the witness's criminal charges were dismissed on insufficiency of evidence grounds). Given that the letter correspondence was not favorable to Petitioner and that Mr. Alexander was not charged with any crimes as a result of the letter correspondence, the Court concludes that the letter correspondence does not constitute *Brady* evidence.

Even assuming *arguendo* the letters should have been disclosed under *Brady*, they were not material. Materiality is generally the most difficult element to prove in a *Brady* claim. *Cobb*, 682 F.3d at 377. The Fifth Circuit has recognized that the materiality of *Brady* evidence—whether it be exculpatory or impeachment evidence—depends "almost entirely on the value of the evidence relative to the other evidence mustered by the State." *Spence v. Johnson*, 80 F.3d 989, 995 (5th Cir. 1996) (internal quotation marks omitted). Thus, "when the testimony of the witness who might have been impeached by the undisclosed evidence is strongly corroborated by additional evidence supporting a guilty verdict, the undisclosed evidence generally is not found to be material." *Wilson v. Whitley*, 28 F.3d 433, 449 (5th Cir. 1994). Given the strength of the State's case against Petitioner, the Court finds that any marginal impeachment value associated with the letters does not give rise to a reasonable probability, *i.e.,* a probability that is "substantial, not just

conceivable,'"[4] that the outcome at trial would have been different had the letters been disclosed.

For the foregoing reasons, Petitioner has not demonstrated that the state court decision rejecting his *Brady* claims was contrary to, or involved an unreasonable application of, clearly established federal law.

III.   <u>Claim 3</u>

In Claim 3, Petitioner argues his constitutional rights were violated due to the cumulative effect of the *Brady* violations asserted in Claims 1 and 2 as well as ineffective assistance of counsel. The Fifth Circuit has held that "[w]hen there are a number of *Brady* violations, a court must analyze whether the cumulative effect of all such evidence suppressed by the government raises a reasonable probability that its disclosure would have produced a different result." *Sipe*, 388 F.3d at 478 (citing *Kyles v. Whitley*, 514 U.S. 419, 421–22 (1995)). Because the Court has determined that there were no *Brady* violations, Claim 3 lacks merit.

IV.   <u>Claims 5, 6, & 7</u>

In Claims 5 and 6, Petitioner alleges the violation of his Sixth Amendment right to conflict-free counsel.  In Claim 7, Petitioner claims he received ineffective assistance of trial counsel.  The Court first discusses the precepts of law relevant to Petitioner's Sixth Amendment claims in the federal habeas context.

---

[4] *See United States v. Brown*, 650 F.3d 581, 588 (5th Cir. 2011)

The Supreme Court has established a two-prong test for evaluating claims for ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 697 (1984). A petitioner seeking relief must demonstrate (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced his defense. *Id.* The petitioner bears the burden of proof and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1993). If a court finds the petitioner has made an insufficient showing as to one prong, it need not address the other. *Strickland*, 466 U.S. at 697.

In order to demonstrate deficient performance, the petitioner must show that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). There is a strong presumption that counsel's conduct falls within a wide range of reasonable representation. *See Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir. 1986). Counsel's conduct is assessed "on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (citing *Strickland*, 466 U.S. at 690).

In order to prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* "The likelihood of a different [outcome] must be

substantial, not just conceivable." *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011).

When reviewing a petition for habeas relief, the court does not determine *de novo* whether the performance of defense counsel satisfied *Strickland*. *See id.* at 785.  Rather, the court focuses on whether the state court's application of *Strickland* was reasonable*. See id.*  "While [s]urmounting *Strickland's* high bar is never an easy task, establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Miller v. Thaler*, 714 F.3d 897, 902 (5th Cir. 2013)(alteration in original) (internal quotation marks omitted). In other words, because the standards created by *Strickland* and § 2254(d) are both "highly differential," it is "doubly" difficult to establish ineffective assistance of counsel when the two operate in tandem. *See Richter*, 131 S. Ct. at 788.  Thus, when a federal habeas petitioner in state custody asserts ineffective assistance of counsel, the question before the court "is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.*

A. *Claims 5 & 6—Conflict of Interest*

In Claim 5, Petitioner argues his Sixth Amendment right to counsel was violated because an actual conflict of interest existed between Mr. Meyer and former Judge Leon Cannizzaro,  who presided over Petitioner's trial. Petitioner alleges Cannizzaro paid Mr. Meyer bonuses from judicial funds while Mr. Meyer was representing Petitioner.  In Claim 6, Petitioner argues his Sixth Amendment right to counsel was violated because an actual conflict of interest existed between himself and Mr. Meyer.  This conflict allegedly arose from the fact that Mr. Meyer represented

23

Petitioner in a criminal proceeding despite the pendency of a civil suit filed by the latter against the former.

Petitioner urges this Court to assess his conflict-of-interest claims under *Cuyler v. Sullivan*, wherein the Supreme Court held that prejudice is presumed if the defendant shows an actual conflict of interest adversely affected his lawyer's performance. 446 U.S. 335, 349–50 (1980). The Fifth Circuit has since clarified that *Cuyler* only applies to actual conflicts resulting from multiple representations. *See Beets v. Scott*, 65 F.3d 1258, 1265–66 (5th Cir. 1995) (en banc); *United States v. Garza*, 429 F.3d 165, 172 (5th Cir. 2005) ("*Cuyler* only applies where an attorney was effectively, if not technically, representing multiple clients in the same proceeding."). Where, as here, the alleged conflict stems not from multiple client representations but from a conflict between the attorney's personal interest and that of his client, the petitioner must also demonstrate prejudice. *See Beets*, 65 F.3d at 1260.

During post-conviction proceedings, the state habeas court denied Petitioner's request for an evidentiary hearing and found that as a matter of fact the payments to Mr. Meyer had ceased prior to Petitioner's second trial. As a result, the state habeas court concluded that no actual conflict of interest existed and denied Petitioner's application for post-conviction relief. The state court's factual findings are presumed to be correct based on the record that existed before the state court. Petitioner has failed to rebut this presumption by clear and convincing evidence. Accordingly, this Court finds that the state habeas court's denial of Claim 5 was reasonable.

24

As to Claim 6, the Court previously found that the state habeas court unreasonably applied federal law in denying Petitioner's request for post-conviction relief. Consequently, the Court held an evidentiary hearing as to Claim 6 on August 10, 2012.  Mr. Meyer testified that he was unaware of Petitioner's civil law suit against him during the course of Petitioner's retrial.  He explained that he was never personally served and has not hitherto answered the suit. Given the foregoing, there is simply no basis for the Court to conclude Petitioner's civil suit affected Mr. Meyer's performance of his duties as advocate.  Accordingly, the Court will not grant relief as to Claim 6.

B. *Claim 7—Ineffective Assistance of Trial Counsel*

Petitioner also claims he received ineffective assistance of trial counsel. Specifically, Petitioner alleges Mr. Meyer was ineffective because he (1) failed to conduct an adequate investigation of the facts and circumstances of the offense; (2) failed to call certain eyewitnesses at trial; (3) failed to object to the prosecution's use of credibility evidence before witnesses had been impeached; (4) allowed the jury to hear that an eyewitness had been murdered and had identified Petitioner as the shooter; (5) failed to elicit evidence of the physical similarity between Petitioner and his brother; (6) failed to obtain a psychological expert with expertise in the area of eyewitness identification; (7) failed to present impeachment evidence of trial witnesses; (8) failed to preserve Petitioner's right to a constitutional grand jury selection process; (9) failed to object to improper argument and examination of witnesses by the prosecutor; and (10) failed to file a motion for new trial on Petitioner's behalf. The state habeas court denied Petitioner's claims for

ineffective assistance of counsel based on a finding that Petitioner was not prejudiced by trial counsel's performance.

### i. Failure to Investigate

Petitioner asserts that his trial counsel failed to interview an eyewitness, Maryann Bindon, failed to interview Carl Wright, an individual who was seen running from the shooting, failed to interview employees of Fleet Tire Service (the "Fleet Tire employees"), which was located across the street from where the shooting took place, and failed to interview other eyewitnesses (Shameka Vaughn and Teita Vaugnn) questioned by the police who did not testify. Petitioner contends that had these individuals been interviewed, they would have identified Petitioner's brother, Marvin Coleman, as the shooter. Petitioner also claims Mr. Meyer was ineffective because he failed to interview the NOPD Task Force officers who initially arrested Petitioner's brother for the crime, failed to adequately consult with co-counsel, and failed to interview jurors from his first trial.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691. "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). The Court granted Petitioner an evidentiary hearing to further develop his factual assertions.

Petitioner claims Mr. Meyer's performance was constitutionally defective for failure to interview the Fleet Tire employees.  Yet Mr. Meyer testified at the evidentiary hearing before this Court that the Fleet Tire employees were interviewed by the investigative team assigned to his co-counsel, Mr. Rydelek.  After reviewing the reports generated by those interviews, Mr. Meyer decided the Fleet Tire employees would not be "helpful one way or other."  This is precisely the type of professional judgment that is shielded from judicial second-guessing.  *See Strickland*, 466 U.S. at 691 ("[C]ounsel has a duty to . . . make a reasonable decision that makes particular investigations unnecessary.").  Given the strong presumption that counsel's performance was constitutionally adequate, it is reasonable to conclude that Mr. Meyer's failure to personally interview the Fleet Tire employees was not constitutionally deficient.

When asked whether he interviewed Shameka Vaughn or Teita Vaughn, Mr. Meyer stated that he could not remember.  This is the sum total of evidence which Petitioner elicited at the evidentiary hearing as to these two potential witnesses.  The State, on the other hand, presented Mr. Meyer with a police report, which Mr. Meyer believes he reviewed prior to trial.  The report states that Shameka Vaughn was unable to see the alleged shooter's face.  All she could see was "one black male standing over another black male."  Thus, it was arguable that a reasonable attorney could decide to forego further investigation, at least with respect to Shameka Vaughn. *Cf. Harrington*, 131 S. Ct. at 788.

Assuming *arguendo* Mr. Meyer's failure to interview the Vaughns was constitutionally

27

deficient, Petitioner has not demonstrated the requisite prejudice.  As a preliminary matter, Petitioner has failed to establish what those interviews would have revealed, much less how any newly-discovered evidence would have altered the outcome at trial.  Petitioner had ample opportunity to present evidence to this effect at the August 10, 2012 hearing yet declined to do so.  Nor did Petitioner request a second evidentiary hearing to develop the likely fruits of a further investigation.  Petitioner's conclusory allegation that the Vaughns would have identified Marvin Coleman as the shooter lacks adequate support in the record.  Moreover, even if the Vaughns would have identified Marvin as the shooter in an out-of-court statement, it is certainly questionable that such information would have had a "substantial" likelihood of changing the outcome at trial.  Whether further pre-trial investigation would have uncovered certain information, which in turn would have uncovered other information, is inherently speculative, and generally cannot—absent supporting evidence to the contrary—demonstrate the requisite prejudice under *Strickland*.  Given the foregoing, it was reasonable for the state habeas court to conclude Petitioner failed to carry his burden of demonstrating prejudice.

Petitioner's claims with respect to Mr. Meyer's failure to interview Carl Wright and certain NOPD police officers fail for similar reasons.  Petitioner did not present any evidence at the August 10, 2012 hearing as to what further investigation would have revealed.  Nor did he identify any such evidence in his post-hearing brief.  Thus, even if the Court were to conclude that Mr. Meyer should have interviewed these people, it was reasonable for the state habeas court to conclude

28

that Petitioner's defense was not prejudiced.

Petitioner's strongest claim relates to Maryann Bindon.  Although Ms. Bindon did not witness the shooting take place, she came upon the crime scene thereafter.  Ms. Bindon gave a statement to the police on the night of the shooting and later excluded Petitioner as the murderer from a photographic line-up of suspects.

The parties dispute whether Ms. Bindon was actually interviewed.  The Court need not resolve this discrepancy, nor address whether Petitioner should have interviewed Ms. Bindon.  As with the other witnesses whom Mr. Meyer failed to interview, the Court cannot  envision how a pre-trial interview would have had a "substantial," as opposed to merely "conceivable," likelihood of altering the result at trial.  In fact, it would be reasonable to conclude that Mr. Meyer already knew the substance of what Ms. Bindon would say if interviewed, given that Mr. Meyer had reviewed her statements to police before trial.  Accordingly, it was reasonable for the state court to deny Petitioner's ineffective-assistance-of-counsel claim for failure to interview Ms. Bindon.[5]

Regarding trial counsel's failure to confer with co-counsel in the first trial, this claim was rendered moot by the grant of a new trial and co-counsel's dismissal from the case before the second trial. *See United States v. Strother*, 387 F. App'x 508, 509 (5th Cir. 2010) (finding that a claim for ineffective assistance of counsel arising from the first trial was rendered moot by the grant of

---

[5] Whether Mr. Meyer's failure to call Ms. Bindon at trial was constitutionally deficient is a different question—one which the Court answers in a separate subsection.

a new trial). Moreover, Petitioner failed to show he suffered actual prejudice by trial counsel's alleged failure to consult with co-counsel. Petitioner fails to direct the court to any evidence that was uncovered by co-counsel, which should have been admitted at Petitioner's trial.

Finally, Petitioner has not demonstrated that he was prejudiced by trial counsel's failure to interview the jurors from his first trial. Petitioner offers no explanation as to what these interviews would have revealed. That trial counsel may have uncovered exculpatory information from the jurors is too speculative to establish prejudice. Accordingly, it was reasonable to deny habeas relief for failure to adequately investigate.

ii. *Failure to Present Eyewitness Testimony at Trial*

Similar to the arguments asserted above, Petitioner asserts trial counsel was ineffective because he failed to offer eyewitness testimony at trial from Ms. Bindon and Mr. Wright. According to Petitioner, these witnesses would have testified that Petitioner was not the shooter. To prevail on an ineffective assistance claim based on counsel's failure to call a witness, a petitioner must (1) name the witness, (2) demonstrate that the witness would have testified, (3) set forth the content of the proposed testimony, and (4) demonstrate that the testimony would have been favorable. *Gregory v. Thaler*, 601 F.3d 347, 352 (5th Cir. 2010). The Fifth Circuit has "repeatedly held" that claims based on an uncalled witness are disfavored in federal habeas corpus review "because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566

30

F.3d 527, 538 (5th Cir. 2009).  Such claims are especially disfavored if not supported "by evidence indicating the witness's willingness to testify and the substance of the proposed testimony."  *Thaler*, 601 F.3d at 352.

Petitioner has failed to make out a *prima facie* case that counsel was ineffective for failing to call Ms. Bindon.  Specifically, Petitioner has not submitted even a scintilla of evidence that Ms. Bindon would have testified if called as a witness, despite being afforded multiple opportunities to present such evidence.[6]  Even if Ms. Bindon would have testified, Petitioner has failed to set forth the content of her proposed testimony.  The only evidence before the Court is Ms. Bindon's statement in a police report dated May 19, 2000.  Petitioner's retrial did not take place until July 17, 2001.  There is nothing in the record to suggest Ms. Bindon's trial testimony would have been consistent with a statement given to police over a year prior to the commencement of Petitioner's retrial.[7]  Petitioner's claim as to Mr. Meyer's failure to interview Carl Wright (or any other witness) fails for the same reasons.  Accordingly, it was a reasonable application of *Strickland* for the state court to dismiss Petitioner's ineffective-of-assistance-of-counsel claims for failure to call certain witnesses at trial.

---

[6] In fact, Petitioner's inability to contact Ms. Bindon during the course of these proceedings suggests Ms. Bindon would *not* have testified if called.

[7] The most competent evidence of the substance of a proposed witness's testimony is generally a personal affidavit or some other type of sworn testimony.  *See Thaler*, 601 F.3d at 353; *cf. Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002).

### iii.  *Failure to Object to Witness Credibility Evidence Prior to Impeachment*

Petitioner also contends trial counsel was ineffective because he failed to object to evidence concerning witness credibility before witnesses had been impeached. Specifically, Petitioner argues the State improperly introduced evidence on direct examination as to why Mr. Alexander and Mr. Angelety did not immediately contact police with information about the crime. Mr. Alexander explained that he spoke with police only after meeting with his lawyer and that he was testifying at Petitioner's trial because he thought it was "the right thing to do." (Trial Tr. p. 125.) On direct examination, Mr. Angelety was asked why he did not speak with police on the date of the crime. (*Id.* at p. 157.) Mr. Angelety responded that he was initially hesitant because he feared for his life. (*Id.*)

The Court finds that the testimony of Mr. Alexander and Mr. Angelety is not probative of their credibility as witnesses. Rather, the Court finds that the witnesses offered an explanation for their conduct, which was necessary to understand the sequence of events and understand when they identified Petitioner from the photographic lineup. *See State v. Sheppard*, 350 So. 2d 615, 644 (La. 1977) (ruling that a witness's testimony did not affect credibility when the witness offered an explanation for his conduct that was relevant to understanding the identification of the accused). Even if this testimony had the incidental effect of making Mr. Alexander and Mr. Angelety appear more credible, Petitioner was not prejudiced by this testimony.  Thus, it was reasonable to deny relief as to this claim.

iv.  *Admission of Testimony that an Eyewitness had been Murdered*

Petitioner also alleges trial counsel was ineffective because he allowed witnesses to testify that an eyewitness, Derwanda Thomas, was Petitioner's ex-girlfriend and that she was murdered after identifying Petitioner as the shooter. Based on a review of the trial record, trial counsel did not act deficient, because he made timely objections. Specifically, trial counsel objected to Detective Crowden's direct testimony when he mentioned Derwanda Thomas' name. (Trial Tr. p. 41.) Trial counsel also prevented Ms. Thomas' name from being revealed when he objected to Detective Crowden's testimony concerning the information relied upon to issue the arrest warrant for Petitioner. (*Id.* at 43.) Likewise, trial counsel prevented Ms. Thomas' name from being revealed when he objected to Detective Crowden's testimony concerning his meeting with Mr. Angelety. (*Id.* at 47.) Trial counsel also objected to Detective Crowden's testimony that an eyewitness had been murdered. (*See id.*) Furthermore, trial counsel objected and moved for a mistrial when Mr. Alexander revealed that an eyewitness had been murdered. (*Id.* at 145.) Trial counsel again moved for a mistrial during closing argument. (*Id.* at 177.)

Nevertheless, Petitioner argues trial counsel was deficient because he opened the door to Mr. Alexander's testimony concerning the death of an eyewitness when counsel questioned Mr. Alexander about his efforts to obtain a deal in exchange for testimony at trial. The Court finds that trial counsel's decision to question Mr. Alexander about a possible deal falls within the realm of trial strategy and does not constitute deficient performance. Given trial counsel's multiple

33

objections concerning Ms. Thomas, it cannot be said that trial counsel acted deficient in failing to object. Accordingly, it was a reasonable application of *Strickland* for the state habeas court to deny relief.

v. *Failure to Present Evidence of Marvin Coleman's Physical Appearance*

Petitioner also argues trial counsel was ineffective for failure to present evidence of Marvin Coleman's physical appearance in order to demonstrate that Marvin Coleman was the actual perpetrator.  To the extent Petitioner argues Mr. Meyer should have called Marvin Coleman to testify, that argument fails for the reasons outlined in subpart ii.  In fact, Mr. Meyer testified at the August 10, 2012 hearing that he had attempted to secure Marvin Coleman's presence at trial but was unsuccessful.

Although Marvin Coleman was apparently unwilling to come to trial, Petitioner argues Mr. Meyer's counsel was ineffective for failure to present evidence at trial of the physical similarity between Marvin and Petitioner.  Yet counsel may have concluded such evidence would not have been as forceful as having Marvin Coleman present in court.  Moreover, it is also possible that counsel thought that presenting evidence of physical similarity could have backfired: if the witnesses to whom Mr. Meyer presented the requested evidence still made a positive identification of Petitioner despite the physical similarity with his brother, then the credibility of the witness' testimony would likely be bolstered.  Thus, the Court finds that it is reasonable to conclude Petitioner failed to rebut the strong presumption that, "under the circumstances, the

34

challenged action might be considered sound trial strategy." *See Strickland*, 466 U.S. at 689 (internal quotation marks omitted).

Even if counsel's performance was constitutionally deficient, Petitioner cannot demonstrate that such performance prejudiced his defense. The State's evidence was substantial. Annie Jones testified that she opened her apartment door immediately after the shooting and saw Petitioner—whom she recognized from around the apartment building—standing over the victim holding a gun in one hand and reaching into the victim's pocket with another hand. Vertis Alexander testified that he had known Petitioner for approximately four years. Shortly after the shooting took place, Mr. Alexander exited his kitchen and confronted Petitioner, who was walking down the apartment hallway with a gun in his hand. Unlike Mr. Alexander and Ms. Jones, Arc Angelety testified he actually witnessed the shooting take place. Mr. Angelety overheard an argument between two people and then observed Petitioner holding a gun to the victim's head. When the victim attempted to pull away, Petitioner shot him in the chest. Mr. Angelety testified that he had known Petitioner for approximately two years. All three of these witnesses—Mr. Alexander, Ms. Jones, and Mr. Angelety—positively identified Petitioner in a photographic lineup at the police station prior to trial. Given the strength of the State's case, it was reasonable for the state habeas court to conclude that Petitioner failed to establish a substantial likelihood that he would not have been convicted but for counsel's failure to present evidence of Marvin's physical appearance. *Cf. Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by

35

the record is more likely to have been affected by errors than one with overwhelming record support.").

### vi. *Failure to Obtain Psychological Expert in Eyewitness Identification*

The Fifth Circuit has ruled that trial counsel is not *per se* required to call an expert witness to challenge eyewitness testimony. *See Cantu v. Collins*, 967 F.2d 1006, 1016 (5th Cir. 1992). Rather, trial counsel acts strategically when he attacks eyewitness testimony through vigorous cross-examination, pre-trial motions to suppress, and argument to the jury. The record shows Petitioner's trial counsel challenged the eyewitness testimony through a pre-trial motion to suppress and through vigorous cross-examination. Specifically, Petitioner's trial counsel filed a motion to suppress Annie Jones' eyewitness identification, which was denied by the court. In addition, trial counsel's cross-examination of Ms. Jones revealed that she had known Petitioner for only a month and that she did not witness the actual shooting. Trial counsel's cross-examination of Mr. Alexander also showed that Mr. Alexander failed to identify Petitioner as the perpetrator when interviewed by police at the crime scene. Finally, trial counsel's cross-examination of Mr. Angelety demonstrated that Mr. Angelety may not have been facing Petitioner when the shot was fired. Because the decision of whether to call an eyewitness expert is a strategic choice made by trial counsel, the Court cannot find that Petitioner's trial counsel acted unreasonably in declining to retain an eyewitness expert. Therefore, the state habeas court reasonably applied *Strickland* in denying Petitioner relief on these grounds.

36

vii. *Failure to Elicit Impeachment Evidence of Trial Witnesses*

Petitioner further alleges trial counsel was ineffective because he failed to present impeachment evidence as to Mr. Angelety, Ms. Jones, and Mr. Alexander. In particular, Petitioner avers trial counsel failed to impeach Mr. Angelety on his drug conviction. Based on a review of the record, the Court disagrees. Before trial, Mr. Meyer specifically requested that the State reveal any prior convictions for anticipated trial witnesses. As of the time of Petitioner's trial, Mr. Angelety had been arrested only once and had no convictions. In fact, the trial court specifically precluded trial counsel from introducing evidence of Mr. Angelety's arrest. Given that Mr. Angelety had no convictions at Petitioner's trial, trial counsel did not act deficient in failing to impeach Mr. Angelety concerning his drug conviction.

Petitioner also alleges trial counsel failed to impeach Mr. Angelety concerning what time the child was brought inside, whether Mr. Angelety was at the crime scene when the police arrived, the inconsistences regarding the length of time that Ms. Jones and Mr. Alexander knew Petitioner, the exact time when Mr. Alexander saw Petitioner on the day of the shooting, and whether Mr. Alexander was aware of the penalties associated with his pending charges. After reviewing these inconsistencies, the Court concludes that it was reasonable for the state habeas court to find that Petitioner was not prejudiced. Furthermore, the Court concludes that most of these inconsistencies concern minor details and are insufficient to overcome the identification testimony of three eye-witnesses. Moreover, trial counsel addressed several inconsistencies through cross-examination.

Thus, it was a reasonable application of *Strickland* for the state habeas court to deny relief.

      viii.  *Failure to Preserve Petitioner's Right to Constitutional Grand Jury Selection*

Petitioner claims trial counsel was ineffective for failing to preserve Petitioner's right to

constitutional grand jury selection based on the Louisiana Supreme Court's ruling in *State v. Dilosa*,

848 So. 2d 546 (La. 2003). In *Dilosa*, the Louisiana Supreme Court determined that article 413(C)

of the Louisiana Code of Criminal Procedure and Louisiana Revised Statute section 15:114, which

governed the selection process for grand jury panels and forepersons in Orleans Parish at the time,

violated the Louisiana Constitution. *Id.* at 551. In the instant case, trial counsel verbally filed a

motion to quash the indictment before trial, which was denied by the trial court. Petitioner argues

trial counsel was ineffective because he failed to comply with state law, which required the motion

to be filed in writing prior to juror examinations. Petitioner also contends trial counsel failed to

present evidence that the Louisiana Supreme Court's ruling in *Dilosa* affected the grand jury

selection process in Petitioner's case.

The Court concludes that it was reasonable for the state habeas court to deny relief as to

this claim. *Dilosa* involved state constitutional rights, which do not provide a basis for federal

habeas relief. *See Engle v. Isaac*, 456 U.S. 107, 119 (1982) (finding that federal habeas relief may

be granted only when a petitioner has suffered a violation under the United States Constitution).

Because the rights addressed in *Dilosa* were created by the state constitution, Petitioner is not

entitled to federal habeas relief. Moreover, even if trial counsel had complied with the state law

requirements in filing the motion to quash, Petitioner has failed to demonstrate that the motion would have been granted. In fact, Petitioner fails to adduce any evidence that race or gender discrimination adversely affected the selection of the grand jury that indicted him. *See Rideau v. Whitley*, 237 F.3d 472, 484–85 (5th Cir. 2000) (ruling that a claimant is required to prove discrimination in cases alleging unconstitutional grand jury selection).

   ix. *Failure to Object to Improper Argument & Witness Examination by Prosecutor*

   Petitioner also contends trial counsel was ineffective for failing to object to improper argument and examination of witnesses by the prosecution. In particular, Petitioner argues the prosecutor relied on hearsay evidence linking the nickname "Casino" with Petitioner. Petitioner also argues trial counsel failed to object to the impermissible bolstering of witness credibility during opening arguments, failed to move for a mistrial following remarks that suggested Petitioner was responsible for the death of an eyewitness, failed to object to the stipulated testimony of Detective Wayne Rumore, failed to object to hearsay testimony, and failed to object to leading questions.

   Based on a review of the trial record, the Court finds that Petitioner's arguments lack merit. In fact, trial counsel did object to use of the nickname "Casino" to identify Petitioner. (Trial Tr. p. 118.) Moreover, the nickname did not prejudice Petitioner because three eyewitnesses were able to identify Petitioner in a photographic lineup and in court as the person who shot Tony Cressey. As previously discussed, trial counsel did not act deficient in failing to object to the bolstering of witness credibility given that the testimony was necessary to explain the timing and sequence of

events in identifying Petitioner. Contrary to Petitioner's argument, trial counsel did not act deficient given that he moved for a mistrial twice following remarks that an eyewitness had been murdered. (*See id.* at p. 145, 177.) Regarding Detective Rumore's testimony, the hearsay evidence, and the leading questions, Petitioner fails to demonstrate how his defense was prejudiced. Therefore, the Court finds that the state habeas court reasonably applied *Strickland* in denying relief.

x.  *Failure to File Motion for New Trial*

Finally, Petitioner argues trial counsel was ineffective because he failed to file a motion for new trial based on all the errors allegedly committed by trial counsel. Because the Court has determined that it was reasonable for the state habeas court to conclude that Petitioner failed to carry his burden of proof under *Strickland*, this objection is essentially moot. Moreover, trial counsel twice moved for a mistrial throughout the proceedings and objected to many of the errors raised by Petitioner. Thus, Petitioner was not prejudiced by trial counsel's failure to file a motion for a new trial.

V.    Claim 8

Petitioner contends he was denied effective assistance of appellate counsel in violation of his Fifth, Sixth, Eighth, and Fourteenth Amendment rights. In particular, Petitioner argues his appellate counsel was ineffective because she (1) failed to appeal the trial court's admission of Petitioner's spontaneous utterances; (2) failed to assign other apparent errors in the record and

failed to file a motion for new trial; (3) failed to present her two errors effectively;  and (4) failed to obtain a copy of the transcript and entire record.

"The entitlement to effective assistance does not end when the sentence is imposed, but extends to one's first appeal of right." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). The *Strickland* standard also governs claims for ineffective assistance of appellate counsel. *See Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir. 2004). Thus, a petitioner must demonstrate that appellate counsel failed to perform according to reasonable professional standards and that the petitioner was prejudiced by appellate counsel's performance. *See id.* Regarding the deficiency prong, the Fifth Circuit has found that "[c]ounsel does not need to 'raise every nonfrivolous ground of appeal available. Nevertheless, a reasonable attorney has an obligation to research the relevant facts and law, or make an informed decision that certain avenues will not prove fruitful." *Williamson*, 183 F.3d at 462 (quoting *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998)). Regarding the prejudice inquiry, a petitioner must demonstrate that there is a reasonable probability that he would have prevailed on appeal but for counsel's deficient performance. *Briseno v. Cockrell*, 247 F.3d 204, 207 (5th Cir. 2001).  A federal habeas court's review of a state court's application of *Strickland* is "doubly deferential," regardless of whether the petitioner challenges the performance of trial counsel or appellate counsel.  *See Dorsey v. Stephens*, 720 F.3d 309, 319 (5th Cir. 2013) (internal quotation marks omitted).  Thus, the question is still "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

41

(internal quotation marks omitted).

Petitioner first argues appellate counsel was ineffective for failure to object to Petitioner's spontaneous utterance regarding the death of an eyewitness. Trial counsel moved to suppress this statement in a pre-trial motion, which was denied by the trial court. The trial court found the statement to be both voluntary and relevant to Petitioner's guilt or innocence. Based on the trial court's ruling, the Court finds that it was reasonable for appellate counsel not to raise this issue and focus on other claims that she believed warranted more attention. Moreover, even if appellate counsel was deficient, Petitioner has failed to demonstrate that there is reasonable probability that he would have prevailed on direct appeal but for appellate counsel's deficient performance.

Regarding appellate counsel's failure to assign other apparent errors in the record and failure to file a motion for new trial, the Court finds that Petitioner is not entitled to relief given that these errors previously were found to lack merit under *Strickland* based on an examination of trial counsel's performance. Therefore, appellate counsel was not deficient in declining to raise these claims. On direct appeal, appellate counsel challenged the denial of the motion to quash the indictment based on an unconstitutional grand jury selection and the denial of a mistrial based on Mr. Alexander's testimony that an eyewitness had been murdered. The Court finds that Petitioner has failed to adduce any evidence that race or gender discrimination played a role in the selection of the grand jury that indicted him. As a result, there is no reasonable probability that Petitioner would have prevailed on direct appeal. Moreover, the filing of a reply brief and a request for oral

argument would not have changed this result.

As for appellate counsel's failure to raise a Confrontation Clause claim in conjunction with Mr. Alexander's testimony concerning a dead eyewitness, the Court finds no Confrontation Clause issue arose given that Ms. Thomas' identification of Petitioner never was revealed to the jury. Rather, the jury heard that Ms. Thomas was an eyewitness who was brought to the police station, that she knew Petitioner's full name, that she had dated Petitioner in the past, that she was currently dating Mr. Angelety, and that she was killed following Mr. Cressey's murder. Because no evidence was presented to the jury that Ms. Thomas actually identified Petitioner as the shooter, there was no Confrontation Clause violation. Thus, it is a reasonable application of *Strickland* to deny relief on these grounds.

For the reasons articulated below in addressing Claim 9, the Court finds appellate counsel did not render deficient performance in failing to request a complete trial transcript. The record on appeal includes all objections preserved for appeal, including the objections made during voir dire and closing arguments. Furthermore, Petitioner has failed to demonstrate that he was prejudiced by an incomplete transcript given that he has failed to identify those portions of the trial record that would entitle him to relief.

VI.    Claim 9

In Claim 9, Petitioner alleges the State violated his rights by failing to produce (1) a complete transcript of voir dire, (2) a complete transcript of closing arguments, and (3) a complete

transcript of the first trial. The state habeas court ruled that Petitioner failed to show prejudice resulting from the missing portions of the trial transcript.

"Due process requires that a record of 'sufficient completeness' be provided for appellate review of the errors raised by a criminal defendant." *Weber v. Cain*, No. 06-1055, 2008 WL 3876399, at *8 (E.D. La. Aug. 20, 2008) (citing *Draper v. Washington.*, 372 U.S. 487, 496–98 (1963)). The State, however, is not "obligated to automatically supply a complete verbatim transcript." *Moore v. Wainwright*, 633 F.2d 406, 408 (5th Cir. 1980). Moreover, the State is not required to expend funds for those parts of the transcript that are not "germane to consideration of the appeal." *Draper*, 372 U.S. at 495. Therefore, "when the transcript and record contain the portions necessary to address the issues actually raised on appeal, including those portions where objections were made by counsel, the record is constitutionally sufficient for a meaningful appeal." *Womack-Grey v. Warden, La. Corr. Inst. for Women*, No. 08-3956, 2010 WL 3473081, at *8 (E.D. La. Apr. 14, 2010) (citing *Schwander v. Blackburn*, 750 F.2d 494 (5th Cir. 1985)).

The Court finds the record in this case was sufficient for the state courts to review Petitioner's claims for relief. Although the record did not include the entire trial voir dire, entire closing arguments, and a transcript of the first trial, the record included all objections raised during voir dire and during closing arguments. As a result, the record included all objections preserved for appeal. Moreover, Petitioner has failed to direct the Court to those missing portions of the record that would entitle him to relief. *See Womack-Grey*, 2010 WL 3473081, at *8 ("[A] petitioner must

44

support his claims with more than mere unsubstantiated, transparent speculation."). Thus, the

Court concludes the state habeas court reasonably applied federal law in finding no prejudice.


## CONCLUSION

For the reasons previously stated, the petition for writ of habeas corpus filed by Calvin

Coleman is DISMISSED WITH PREJUDICE.


New Orleans, Louisiana, this 31st day of January, 2014.


**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**